**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Chicago Division**

WAVE 3 LEARNING, INC., a Nevada corporation,

    Plaintiff,

v.

AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation,

    Defendant.

Case No.: 14-1948

---

### COMPLAINT FOR DECLARATORY JUDGMENT

FOR ITS COMPLAINT in this matter, Plaintiff, WAVE 3 LEARNING, INC., by and through its attorneys REVISION LEGAL, PLLC, states as follows:

### NATURE OF ACTION AND RELIEF SOUGHT

1. This is a civil action seeking declaratory judgment and injunctive relief under the Copyright Act, 17 USC § 101 et seq and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2. Plaintiff Wave 3 Learning, Inc. ("Wave 3 Learning") seeks a judgment that it is the rightful, true, and sole owner of 17 U.S.C. § 106 copyright rights to a series of instructional books aimed at helping children read, spell, and write. A list of these works is attached as **Exhibit A** ("The Works").

1

## PARTIES

3. Wave 3 Learning is a corporation organized under the laws of the State of Nevada with its principal place of business in Arlington Heights, Illinois.

4. Wave 3 Learning's President is Thomas M. Morrow ("Morrow").

5. Defendant AVKO Educational Research Foundation, Inc. is a domestic non-profit corporation organized under the laws of the State of Michigan ("AVKO").

6. AVKO's President is Donald J. McCabe ("McCabe").

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this matter raises federal questions under the Copyright Act and the Constitution of the United States.

8. This Court has subject matter jurisdiction because an actual controversy exists regarding copyright ownership as pleaded in this Complaint, specifically, that there is a substantial controversy regarding the ownership of copyrights in The Works between the Parties that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, as evidenced by AVKO's express threats of litigation, causing Wave 3 Learning reasonable apprehension that litigation would arise from its continued course of conduct to publish and distribute The Works.

9. This Court has personal jurisdiction over Defendant because AVKO has sufficient minimum contacts with this State such that maintenance of this suit does not offend traditional notions of fair play and substantial justice because AVKO has purposefully directed its activities at residents of this State, the claim arises out of

those activities, and assertion of personal jurisdiction is reasonable and fair. Specifically, upon information and belief, AVKO purposefully availed itself of the privilege of conducting businesses within this state through its substantial, continuous, and systematic business activities to sell The Works to Rainbow Resource Center, Inc., an Illinois corporation with its principal place of business at 655 Township Road 69, Toulon, IL 61483, and, upon information and belief, through its website to consumers within this State. This Court also has specific personal jurisdiction over AVKO because the need for this action arises from AVKO's threats of litigation relating to the sale of The Works, including the sale of The Works within this state.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this state and because Defendant is subject to this court's personal jurisdiction with respect to this action.

## **FACTS**

11. AVKO is a purported non-profit membership-based organization that develops and produces commercial educational materials concerning reading, spelling, handwriting, and keyboarding.

12. AVKO produces numerous instructional books and videos, which it sells through its website for prices ranging from $2.50 to $359.90. See **Exhibit B**, Printout of Materials from AVKO Educational Research Foundation.

13. In 2009, Morrow was chairman and CEO of Home School Holdings, Inc., a corporation located in Des Plaines, Illinois ("Home School Holdings").

3

14. In mid 2009, Home School Holdings adopted a strategy of growth that relied heavily on acquisitions, which its board deemed the "baby steps" program. The purpose of this program was to acquire smaller, pre-existing publishing companies within the home school market to expand the offerings of Home School Holdings.

15. As a component of this strategy, Home School Holdings sought to raise additional capital through an initial public offering, and it applied to register as a publicly traded company with the US Securities and Exchange Commission.

16. In May 2009, McCabe contacted Morrow, in his position as an officer of Home School Holdings, to sell the copyright rights of several of AVKO's instructional materials to Home School Holdings. **Exhibit A** ("The Works").

17. Home School Holdings filed its Form S-1 with the Securities and Exchange Commission on October 13, 2009. See **Exhibit C**, Home School Holdings S-1 Filing.

18. In December of 2009, Home School Holdings entered into negotiations with AVKO and McCabe to purchase the rights to The Works.

19. During these negotiations, McCabe represented that AVKO regularly received over $300,000 in gross revenue annually from the sale of The Works. See **Exhibit D**, Affidavit of Thomas Morrow.

20. McCabe also represented that he had acquired registered copyright rights in and to The Works, that those copyright rights were assigned to AVKO, and that those copyright rights were still subsisting.

21. Through these negotiations, AVKO agreed to assign to Home School Holdings the **worldwide exclusive rights** to The Works. In exchange, Home School Holdings was to provide AVKO with a percentage of the proceeds of each sale of The Works, $50,000, and stock certificates in Home School Holdings worth $250,000.

22. The parties also agreed that, soon after closing and after Home School Holdings realized a gross revenue of $300,000 from the sale of its newly acquired publications, Home School Holdings was to pay AVKO an additional $50,000 in cash and provide stock certificates for an additional $250,000 worth of shares.

23. Additionally, Home School Holdings was to grant a non-exclusive license to AVKO, which would allow AVKO to continue to distribute The Works to individuals through its website, e-books, phone orders, and community sales. In turn, Home School Holdings agreed to sell copies of The Works to AVKO at a sixty percent (60%) discount from their suggested retail price on consignment for these purposes.

24. These terms were codified in an agreement drafted by a non-lawyer, which was titled "Publishing Rights Agreement." Home School Holdings provided AVKO with this agreement on December 17, 2009. See **Exhibit E**, Publishing Rights Agreement (first draft).

25. The Publishing Rights Agreement specifically provided Wave 3 Learning with an exclusive, worldwide and perpetual publishing right to The Works.

26. On May 17, 2010, Home School Holdings announced that it would be unable to timely file its 10-Q filing pursuant to SEC regulations and was given permission from the SEC to file the 10-Q at a later time.

27. On June 3, 2010, Morrow issued a cashiers check to AVKO from his personal bank account for $50,000, which was the amount of the first payment required of Home School Holdings under the Publishing Rights Agreement. See **Exhibit F**, Copy of Cashier's Check.

28. AVKO and Home School Holdings subsequently executed the Publishing Rights Agreement on June 4, 2010. See **Exhibit G**, Executed Publishing Rights Agreement.

29. During this time, Home School Holdings continued to proceed through the SEC registration process. Home School Holdings had numerous difficulties throughout the SEC registration process and ultimately did not secure registration.

30. Since Home School Holdings' IPO attempt soon became unworkable, Morrow resigned as chairman and CEO of Home School Holdings, Inc. on June 17, 2010. Morrow could not provide AVKO with prior notice of his resignation from Home School Holdings, as such prior notice would have been a violation of SEC disclosure requirements. See **Exhibit D**, Affidavit of Thomas Morrow.

31. It soon became clear to McCabe that Home School Holdings could not meet its requirements under the Publishing Rights Agreement, and Morrow offered to continue the same deal through a newly-created entity, namely, Wave 3 Learning, Inc. See **Exhibit D**, Affidavit of Thomas Morrow.

32. Morrow incorporated Wave 3 Learning, Inc. in the State of Nevada on June 18, 2010. See **Exhibit H**, Printout of Nevada Corporate Filing.

33. McCabe and AVKO accepted Morrow's offer, and AVKO and Wave 3 Learning continued to operate under the terms of the Publishing Rights Agreement. See **Exhibit D**, Affidavit of Thomas Morrow.

34. Between June and July of 2010, Wave 3 Learning and AVKO discussed executing a replacement for the Publishing Rights Agreement because Wave 3 Learning had no intention of issuing its stock to the public, as was called for in the Publishing Agreement between AVKO and Home School Holdings.

35. On July 20, 2010, Wave 3 Learning suggested replacing the stock options contained in the Publishing Rights Agreement with a promissory note that would be payable to AVKO and requested that McCabe's attorney draft a replacement for the Publishing Rights Agreement. See **Exhibit I**, Printout of July 20, 2010 Email.

36. In response, and also on July 20, 2010, McCabe replied:

    Until you can come with an agreement that my attorney can justify my signing, we had better just maintain the status quo. Any type of stock or ownership sharing that could possibly lead to AVKO being liable for debts incurred by Wave 3 Learning is not in our best interest.

    So save your gas and your time. There's no point in your making another trip to Michigan in the immediate future. Instead spend your time and energy into the publishing aspect of Wave3Learning getting your ISBNs, editing and

printing the AVKO materials. See **Exhibit I**, Printout of July 20, 2010 Response Email.

37. Consequently, Wave 3 Learning continued to operate under the terms of the Publishing Rights Agreement, which was the parties' "status quo."

38. Wave 3 Learning has spent substantial sums in advertising the Sequential Spelling works and has extensively advertised at home school shows, including the Midwest Homeschool Show in Cincinnati, the Southeast Home School Expo, the HEAV conference, the FPEA conference, the CHAP conference, the CHEC conferences, the APHE conference, the MACHE conference, the Ed Expo, and the International Dyslexia Association.

39. Wave 3 Learning has also made annual visits to its largest customers to inform them of next year's pricing. Through these visits, Wave 3 Learning has achieved additional marketing commitments from both CBD and Timberdoodle.

40. Wave 3 Learning has undertaken search engine marketing campaigns to test the costs and effectiveness of various keywords.

41. On November 3, 2010, Home School Holdings, Inc. filed a Form 15 with the Securities and Exchange Commission to voluntarily terminate its attempt to register and publicly trade its shares.

42. On October 9, 2010 McCabe executed AVKO's yearly IRS Form 990-EZ, which stated that AVKO had sold the rights to the copyrighted works to Wave 3 Learning. See **Exhibit J**, AVKO Form 990-EZ.

43. Upon information and belief, AVKO continued to sell the Works in violation of its agreement with Wave 3 Learning and reported revenue of $63,567 in its fiscal year 2011, $92,486 in its fiscal year 2012, and $99,273 in its fiscal year 2013.

44. In December 2010, Wave 3 Learning noticed that a third party had cybersquatted upon the sequentialspelling.com domain name and sought to recover that domain name through the Uniform Domain Name Dispute Resolution Policy. "Sequential Spelling" is one of the more popular product lines contained within The Works.

45. Since the Publishing Rights Agreement was inartfully drafted and was completely silent on the issue of trademark rights, Wave 3 Learning provided AVKO with a replacement agreement on January 28, 2011 that would have provided Wave 3 Learning with the standing needed under trademark law to take any and all necessary action. See **Exhibit K**, Printout of January 28, 2011 Email.

46. AVKO refused to sign the replacement agreement, which was titled "Trademark and Copyright Assignment Agreement," and claimed that Wave 3 Learning had failed to provide McCabe with speaking engagements, training sessions, previews of any proposed changes to The Works, and the stock options provided for under AVKO's agreement with Home School Holdings. See **Exhibit L**, Printout of January 29, 2011 Response Email.

47. Morrow responded by explaining to McCabe that there is no difference between an exclusive, worldwide, and perpetual publishing right and the assignment of the copyrighted works and requested that the parties work to execute a replacement

agreement. See **Exhibit M**, Printout of January 29, 2011 Reply Email from Morrow.

48. On January 31, 2011, Wave 3 Learning suggested that both AVKO and Wave 3 Learning undergo a "Cooling Off Period" after which time the parties would reconvene to discuss their purported dispute. See **Exhibit N**, January 31, 2011 Email from Morrow.

49. On February 24, 2011, McCabe, operating under the terms of the Publishing Rights Agreement, requested desk copies of six of The Works from Wave 3 Learning. See **Exhibit O**, February 24, 2011 Email from Don McCabe.

50. Wave 3 Learning responded to this request on February 25, 2011 and agreed to provide desk copies "in accordance with our [Publishing Rights] agreement." Additionally, Wave 3 Learning also requested that AVKO cease a breach of that agreement related to its publishing of electronic versions of The Works and requested AVKO's support in protecting the Sequential Spelling trademark and copyrights. See **Exhibit P**, February 25, 2011 Email from Morrow.

51. In a February 28, 2011 email to McCabe's grandson, Morrow explained that the purpose of the grant of a non-exclusive license back to AVKO under the Publishing Rights Agreement so that AVKO may continue to offer The Works was intended "to provide a way to further motivate membership in the Foundation by providing bargain access to the Works as opposed to operating a profit center per se." See **Exhibit Q**, February 28, 2011 Email from Morrow.

52. During this period of dispute, AVKO continued to pay invoices issued by Wave 3 Learning and continued to operate under the general terms of the Publishing Rights Agreement. See **Exhibit D**, Affidavit of Morrow.

53. On June 6, 2011, AVKO's attorney sent a demand letter to Morrow that claimed that Wave 3 Learning had infringed upon AVKO's copyright rights and had breached the Publishing Rights Agreement by failing to make payment of $50,000 under ¶ 3 of that agreement. See **Exhibit R**, June 6, 2011 Letter from Woodrow.

54. Wave 3 Learning responded to AVKO's demand letter on June 13, 2011 and stated that Wave 3 Learning had paid McCabe $50,000. Wave 3 Learning attached evidence of that payment in its response. See **Exhibit S**, June 13, 2011 Letter from Wave 3 Learning.

55. On June 24, 2011, Wave 3 Learning was provided an email by a retailer of its products. This email was from a customer of that retailer and stated that the customer had contacted AVKO, who had stated that it was in a copyright infringement lawsuit with Wave 3 Learning and that Wave 3 Learning had been copying the AVKO books. See **Exhibit D**, Affidavit of Thomas Morrow.

56. In response, Wave 3 Learning sent a cease and desist letter to AVKO on July 12, 2011. In that letter, Wave 3 Learning stated that it had copyright rights to The Works pursuant to the Publishing Rights Agreement and that, as a result of AVKO's false statements, AVKO was liable for defamation and tortious interference with contractual and prospective economic advantage. See **Exhibit T**, July 12, 2011 Letter to Woodrow.

## EASTERN DISTRICT OF MICHIGAN LITIGATION

57. In response, AVKO filed a Petition for Injunctive Relief and Temporary Restraining Order in Genesee County, Michigan, which was denied.

58. AVKO then filed a Complaint in the Saginaw County Circuit Court on July 29, 2011, which alleged, among other things, that Wave 3 Learning and Morrow infringed on AVKO's copyright in The Works. See **Exhibit U**, July 29, 2011 Complaint.

59. On August 3, 2011, Morrow and Wave 3 filed a Notice of Removal with the Saginaw County Circuit Court pursuant to 28 U.S.C. § 1441(a) because federal courts have original jurisdiction to hear claims of copyright infringement under 28 U.S.C. § 1338(a).

60. On April 5, 2013, the Eastern District of Michigan granted Wave 3 Learning and Morrow's Motion for Summary Disposition, which dismissed all of AVKO's causes of action, including AVKO's claim of copyright infringement. See **Exhibit V**, 4/5/13, Opinion and Order.

61. Subsequent to the Eastern District of Michigan's decision, AVKO has continued in its incorrect belief that AVKO retains the copyrights in The Works.

62. Specifically, on June 11, 2013, McCabe sent Wave 3 Learning's counsel a letter stating Wave 3 Learning is "expressly forbidden to sell any of 'The Works'" and that "[u]nless AVKO] hears from [Wave 3 Learning] and unless satisfactory payments and negotiations have begun, we will be notifying you distributors that you are in breach of license and are defying Judge Ludington's judgment." See **Exhibit W**, June 11, 2013 AVKO Letter.

63. Further, on August 23, 2013, McCabe sent an email to various distributors in which he claimed "The AVKO Foundation is he owner of the copyrights and ONLY AVKO came make new editions or alter the material of all 40 plus AVKO book. Wave3Learning made unauthorized changes without the express written consent of the author and the AVKO Foundation" See **Exhibit X**, August 23, 2013, McCabe Email.

64. Further, on February 17, 2014, McCabe sent Morrow an email stating 1) Wave 3 Learning was violating the "implied terms of Judge Ludington's licensing agreement" 2) AVKO is "revoking Wave 3 Learning's license to reproduce and distribute those AVKO copyrighted materials referred to as The Works in the Publishing Rights Agreement of June 4, 2010…." See **Exhibit Y**, February 17, 2014 McCabe email.

65. Further, on February 27, 2014, upon information and belief, McCabe sent an email to various distributors of Wave 3 Learning's products stating that "AVKO owns the copyrights to its materials" and requesting the distributors purchase materials from AVKO instead of Wave 3 Learning. See **Exhibit Z**, February 27, 2014 McCabe email.

66. Wave 3 Learning has acted consistent with its ownership of copyright rights to The Works since June 2010.

67. Wave 3 Learning's business operates with a level of apprehension regarding AVKO's claims that damages its business. See **Exhibit D**, Affidavit of Thomas Morrow.

## COUNT I – DECLARATORY JUDGMENT

68. Plaintiff incorporates paragraphs 1-67 above as though fully restated herein.

69. An actual controversy exists between Wave 3 Learning and AVKO as to whether Wave 3 Learning is the rightful owner of the copyrights to The Works.

70. AVKO's express threats regarding the revocation of the perpetual license it granted to Wave 3 Learning, combined with its actions to warn distributors of Wave 3 Learning's allegedly wrongful acts, creates a reasonable apprehension that Wave 3 Learning will face litigation and this action will resolve the uncertainty regarding Wave 3 Learning's copyrights in The Works.

71. Wave 3 Learning alleges, and AVKO denies, that, as a matter of law, Wave 3 Learning owns the 17 U.S.C. § 106 copyright rights to the works of authorship set forth in the attached **Exhibit A** and referred to as The Works, without infringing any right of AVKO under copyright.

72. Wave 3 Learning is entitled to a declaratory judgment against AVKO as set forth in Paragraph 71 above pursuant to the Copyright Act, 17 U.S.C. § 101 et seq and the Constitution of the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wave 3 Learning Inc., requests this Honorable Court grant the following relief:

A. For a judicial determination and order that Plaintiff Wave 3 Learning, Inc. legally possesses the exclusive 17 U.S.C. § 106 rights to The Works under the Copyright Act, 17 U.S.C. § 101 et seq, as identified in this Complaint and in the attached **Exhibit A**;

B. For an Order enjoining AVKO and its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with AVKO, be enjoined and restrained from further asserting rights to The Works under copyright;

C. For the recovery of Wave 3 Learning Inc.'s full costs and reasonable attorney fees pursuant to 17 U.S.C. § 505, and;

D. For such additional relief, in law and equity, as this Court deems just.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all eligible counts contained within this Complaint.

Respectfully submitted,

Date: March 19, 2014

/s/ Eric Misterovich
Eric Misterovich (P73422)
John Di Giacomo (P73056)
Revision Legal, PLLC
1101 Broad St. Ste. 315
St. Joseph, MI 49085
269.281.3908
269.235.9900 (f)
eric@revisionlegal.com