**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **Wave 3 Learning, Inc.** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14 C 1948** |
| | ) | |
| **AVKO Educational Resource** | ) | **Judge Virginia M. Kendall** |
| **Foundation, Inc.,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Status hearing held. Plaintiff Wave 3 Learning, Inc. seeks a declaratory judgment that it owns the copyright to a series of instructional books aimed at helping children read, spell, and write ("the Works"). Defendant AVKO Educational Research Foundation, Inc., whose president registered the Works and assigned them to AVKO, moves to dismiss the First Amended Complaint under Fed. R. Civ. P. 12(b)(6) based on Wave 3's failure to allege a valid transfer of the Works to Wave 3. Because Wave 3 is not the original author or the Works and because Wave 3 does not allege a written transfer of copyright ownership to Wave 3, this Court grants AVKO's motion [24]. Plaintiff is given leave to file a second amended complaint by 8/28/2014. Defendant is given until 9/11/2014 to answer or otherwise plead.

**BACKGROUND**

For purposes of this motion, this Court takes all well-pleaded allegations as true and draws all reasonable inferences based on those allegations in the plaintiff's favor. *See Golden v. State Farm Mutual Automobile Insurance Co.*, 745 F.3d 252, 255 (7th Cir. 2014). AVKO is a non-profit membership-based organization that develops commercial educational materials. (Dkt. No. 21 at ¶ 11.) AVKO's President, Donald McCabe, claims that he acquired registered copyrights to the Works and that AVKO received those copyrights by assignment. (*Id*. at ¶ 20.)

In 2009, McCabe contacted Thomas Morrow, an officer of Home School Holdings ("HSH"), to sell AVKO's copyrights in the Works to HSH. (*Id*. at ¶ 16.) AVKO and HSH reached an agreement concerning the Works, which they memorialized in a Publishing Rights Agreement that granted HSH exclusive rights to The Works in exchange for cash, a percentage of proceeds from sales, and stock in HSH. (*Id*. at ¶¶ 21, 24.) After telling AVKO that HSH could no longer proceed with the transaction due to difficulties obtaining approval for a public offering, Morrow expressed his interest in entering the agreement as an individual. (*Id*. at ¶¶ 27, 28.) Morrow made the first payment required by the Publishing Rights Agreement when he gave AVKO a cashier's check for $50,000 drawn from his personal account. (*Id*. at ¶ 29.) Morrow met with AVKO's president, McCabe, and told him that he would sign the Publishing Rights Agreement on his own behalf. (*Id*. at ¶ 30.) AVKO and Morrow signed the Publishing Rights Agreement on June 4, 2010. (*Id.* at ¶ 31.)

After HSH failed to secure registration with the Securities and Exchange Commission, Morrow offered to substitute his newly formed company, Wave 3, for HSH. (*Id.* at ¶¶ 32-34.) Although the parties continued to operate under the Publishing Rights Agreement, discussions concerning a replacement agreement between AVKO and Wave 3 were unsuccessful. (*Id.* at ¶¶ 36-38.) One issue preventing an agreement was the stock transfer called for under the Publishing Rights Agreement—Wave 3 did not intend to issue stock to the public. (*Id.* at ¶ 37.) The Parties have not entered a subsequent agreement. (*Id.* at ¶49.)

Yet Wave 3 continued to operate under the Publishing Rights Agreement. (*Id.* at ¶ 40.) It not only has marketed and sold the works, but also policed the works. (*Id.* at ¶¶ 41-43, 47.) A dispute concerning the Publishing Rights Agreement led to litigation between the parties in the United States District Court for the Eastern District of Michigan. (*Id.* at ¶¶ 61-64.) Although that Court determined that the Publishing Rights Agreement granted Wave 3 at least a non-exclusive license to the Works, it did not reach the issue of who owns the copyrights to the Works. (*Id.* at ¶¶ 64-65.)

## LEGAL STANDARD

A complaint must state a claim to relief that is plausible on its face in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A claim is plausible on its face when the allegations in the complaint support a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). When considering a motion to dismiss, courts must accept all well-pleaded factual allegations as true, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), and must draw all reasonable inferences in the plaintiff's favor, *Yeftich*, 722 F.3d at 915. Claims that do not raise a right to relief above the speculative level are subject to dismissal under Rule 12(b)(6). *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## DISCUSSION

Under 17 U.S.C. § 201(a), "Copyright in a work protected under this title vests initially in the author or authors of the work." There is no dispute that Wave 3 did not author any of the Works. Rather, the dispute concerns whether there was a transfer of ownership of the copyrights to the Works from AVKO to Wave 3.

"A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Wave 3 claims that the Publishing Rights Agreement is the writing that transfers ownership of the copyrights to the Works from AVKO to Wave 3. That is not the case. At best, the Publishing Rights Agreement evinces a transfer of ownership of the copyrights in the Works from AVKO to Morrow. Based on the allegations in the First Amended Complaint, one could infer that AVKO agreed to substitute Morrow, who not only signed the agreement but also paid $50,000 of his own money to AVKO, for HSH with respect to the Publishing Rights Agreement. But there are no allegations that a writing transfers whatever interests HSH or Morrow holds in the copyrights

to the Works to Wave 3. Nor are there any allegations from which one could infer a writing transferring the copyrights to the Works to Wave 3, whether from HSH, Morrow, or AVKO. Indeed, Wave 3's allegations make clear that AVKO refused to enter an agreement with Wave 3 concerning the copyrights in the Works. Consequently, Wave 3 has not pled sufficient facts to state a claim to the ownership of the copyrights in the Works.

Contrary to Wave 3's suggestion, oral agreements alone cannot transfer ownership in the copyrights to the Works to Wave 3. *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 500 (5th Cir. 2012) (improper to consider oral modification to an agreement transferring ownership in copyrights because a written instrument is required under 17 U.S.C. § 204(a)). While it is true that parties to an oral agreement transferring ownership in copyrights can later confirm that agreement in writing, *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003), Wave 3 has not identified any writing that confirms the purported oral agreements that allow Wave 3 to take either HSH's or Morrow's place with respect to the Publishing Rights Agreement. Notably, the allegations suggest that Wave 3 cannot do so because it does not intend to issue stock, which the Publishing Rights Agreement required of HSH, and AVKO refuses to sign a written agreement with Wave 3. Further, any willingness on AVKO's part to allow Wave 3 to operate under the terms of the Publishing Rights Agreement does not eliminate the need for a writing transferring ownership of the copyrights to the Works to Wave 3 because the writing is a statutory requirement. The same is true for AVKO's treatment of its dealings with Wave 3 for tax purposes. Absent allegations concerning a writing transferring ownership of the copyrights in the Works to Wave 3, Wave 3 cannot state a claim concerning the ownership of the copyrights in the Works.

## CONCLUSION

This Court grants AVKO's motion to dismiss Wave 3's First Amended Complaint because Wave 3 has not pled facts sufficient to state a claim concerning the ownership of the copyrights to the Works. There are no allegations that a written instrument transfers Wave 3 any interest in the copyrights to the Works, whether the transfer is from AVKO, HSH, or Morrow. This dismissal is without prejudice, and Wave 3 has twenty-one days from the date of this order to file a second amended complaint.

Date: August 7, 2014 /s/ Judge Virginia M. Kendall